This is Mark Henderson v. Ford Motor Company. Mary Lee Miller is here for the appellate and the cross-appellee, and Jeffrey Doss is here for the appellee and the cross-appellate. Ms. Miller, you may make your argument. Good morning. May it please the Court, I'm Mary Lee Miller, and I'm here on behalf of Mark Henderson. The District Court in this matter committed numerous errors, which were substantially prejudicial to Mr. Henderson, at the jury trial of this case, which affected its outcome and therefore warrants the judgment entered in favor of Ford Motor Company on the jury's verdict to be vacated and Henderson granted a new trial. First, the District Court abused its discretion with the exclusion of certain other similar incident evidence, the specifics of which I will detail here momentarily. But this includes the exclusion of Ford's warranty claims. It includes the exclusion of another similar incident witness, Kathy Lawhon, both in Henderson's case in chief as well as in rebuttal. And it also includes the exclusion of cross-examination of Ford's design safety engineer, Mr. Miller, and its corporate representative, Mr. Burnett, on the warranty claims. The District Court also erred when it denied Henderson's motion for judgment as a matter of law and its renewal motion on Ford's defense of contributory negligence in the use of the seatbelt. And finally, Ford has filed a cross-appeal in this matter, and I will be happy to answer any questions with respect to that if you have any. However, with respect to the other similar incident evidence, I will begin with the warranty claims. The District Court abused its discretion when it excluded the thousands of warranty claims with respect to the 2001-2004 SN95 Ford Mustang. Mr. Henderson's vehicle was a 2003 Ford Mustang, so these warranty claims involved the exact vehicle at issue in this case. In these warranty claims, plaintiff, through its design expert, Mr. Steve Meyer, proved substantial similarity, that these warranty claims had the exact same defect that Mr. Henderson's vehicle exhibited in this crash, and that is that the front seatbelt system exhibited a slow retractor, which allowed it to either keep slack in the system when being worn or when being stowed. Mr. Meyer testified that as part of his analysis in this case, he reviewed these warranty claims, the pages of which were about 6,500 and involved about 50,000 claims. However, plaintiff, with its proffer, whittled those down to only those claims in which the vehicles exhibited a slow retraction issue. Mr. Meyer, in accordance with this court's decision in Hessen v. Jaguar Cars, testified that the seatbelt systems in these vehicles was exactly the same as the Henderson vehicle, that these vehicles exhibited the exact same defect as the Henderson vehicle, that being the slow retraction issue, that this is the type of information that he relies upon in his field, that within these documents, these vehicles were, within the time frame, the warranty claims were made either before the accident or before the date of manufacturing. And therefore, all of these warranty claims should have put Ford on notice with respect to this particular defect. He also testified with respect to the fact that Ford was responding to these warranty claims with respect to the slow retraction, that it was repairing them by replacing their retractors. And ultimately, in response to the thousands of claims that Ford was responding to, it ultimately issued a technical service bulletin, which is a... So the expert was allowed to use the warranties to form his opinion, but the court didn't allow almost 7,000 pages of documents containing 50,829 repairs to be admitted in the evidence? Yes, and Your Honor, we were only asking for about 28,000 of those to be admitted. We had redacted those that did not have to do with the slow retraction. However, Mr. Meyer was not able to fully explain his opinion on how these warranty claims helped him reach his ultimate conclusions in this case. He was only allowed to be asked, did you review warranty claims, and did you use those in formulating your opinions? What he was not allowed to do is to tell the jury how he used this information to eliminate other causes. And he used this information because it said to him that there was either a slow retraction issue or that the lockup mechanism within the retractor did not work. And so there was testing that showed the locking retractor didn't, in fact, work. So the next question was, well, then what was causing the XX slack in the system? And these warranty claims helped formulate his opinions that there was an issue and that, in fact, Ford was having problems with XX slack remaining in the system. Additionally, there was information that this happened both when the seatbelt was being worn and also when it was being stowed. Ford's position in this case was that it was only a retraction to stowage issue. Plaintiff showed that it was not only that, but it was also when it was being worn. So when it was being worn, the belt would remain loose instead of snug up fit. And so Mr. Meyer was unable to also provide full explanation of how he used the warranty claims to reach his opinions in this case. Plaintiff was also precluded from calling Kathy Lawhon and other similar incident witness. Ms. Lawhon also had an SN95 Ford Mustang, again, the exact same vehicle in this case. Ms. Lawhon complained to Ford Motor Company back in 2014, and Ford was aware of her existence since that time. Ms. Lawhon's testimony in this case before to court and outside the presence of the jury was that she complained to Ford because initially her driver's seatbelt and her Ford Mustang failed to retract. It would not retract to stowage. She also had issue of when it was being worn. She would put it on and it wouldn't snug up or fit tightly on her. The court ultimately... So the reason for excluding her as a witness was not because of the substance of her testimony, but she was not timely disclosed as a witness, right? As I understand the court's ruling, it was both. Number one, the court found that she was not timely disclosed, but he also mentioned that he did not find her testimony and her issue of defect to be substantially similar to that within the Henderson vehicle. With respect to the timely disclosure of Ms. Lawhon, she was put on the witness and exhibit list in accordance with the pretrial order of July 14th. When she was located, which was July 7th, we immediately updated our interrogatory responses and initial disclosures and identified her as a witness. She then was fully disclosed on the witness and exhibit list. There was no violation of any court order. Ultimately, Ford... Was she deposed? No, she was not deposed in this case. Ultimately, though, her complaint was recorded by Ford Motor Company. That information had been provided, redacted. It comes in a format where it provides at the top the contact information of the complainant, and then there is a body which kind of describes what the complainant was reporting to Ford Motor Company. In preparing for trial, going back through the thousands of pages of documents, it was discovered that some of her contact information was actually in the body of that complaint and had not been redacted, and so she was actually then located. However, counsel for Ford at trial did state when this issue was brought up that even though she was not deposed, that he was aware of what her testimony was going to be based upon the complaint. And her proffer at trial was, in fact, similar to what she reported to Ford Motor Company. That being, I had an issue with my driver's seatbelt. It does not snug up when I wear it. It's very concerning to me. She had the retractors replaced. The same issue occurred. And so this went to show that not only was this an issue when the belt was being stowed, but it was also an issue when the belt was being worn, which Ford vehemently denied at trial. And so she was ultimately precluded from the case-in-chief plaintiff's case. However, she also should have been allowed to testify or her testimony given on rebuttal. Ford's design engineer, Mr. Miller, testified at trial that what Mr. Meyer, Henderson's design expert was saying is wrong. That being, this belt did not exhibit a slow retractor issue when the occupant was wearing it. And that he was flat wrong and that there was no evidence of that. Similarly, Mr. Burnett, Ford's corporate representative on cross-examination, also testified that he was not aware of any issue being reported to Ford that the slow retraction took place when the seatbelt was being worn. Not just a stowage issue, but being worn. And that testimony is completely false. Ford had Ms. Lawhon's complaint to Ford since 2014. So Ford was certainly aware that this was not just a retraction to stowage issue, but an issue about when the belt was being worn. And plaintiff was not allowed then to offer Ms. Lawhon's testimony in rebuttal to say, look, this happens in the real world. This is not just a retraction to stowage issue. Ford customers were complaining. Here is Ms. Lawhon. She complained and she has, in fact, testified that when she buckled her seatbelt, it would not snug up on them like Ford Motor Company is saying that it should have. And so, therefore, this same defect was present in her seatbelt, just as it was present in Mr. Henderson's seatbelt system. And so, therefore, the prejudice was not able to be corrected in this case due to the fact plaintiff was unable to cross-examine both Mr. Miller and Mr. Burnett on those issues. With respect to the contributory negligence issue, plaintiff would again assert that Ford failed to present substantial evidence that Mr. Henderson was negligent in the use of his seatbelt. Ford's experts have testified in this case that they don't know when the slack was introduced into the system. They don't know when the bunching and the D-ring occurred, which would prevent the belt from retracting. And so, therefore, we would submit that an error occurred with respect to that. I will reserve the rest of my time. Thank you. All right. Thank you. Ms. Miller, we'll hear from Mr. Doss. May it please the Court. At bottom, the issue in this case is whether a jury's verdict should be overturned because the appellant disagrees with a handful of evidentiary calls by the district court, all of which are subject to an abuse of discretion standard. Not once has the appellant claimed that the district court applied the wrong legal standard. Not once has the appellant claimed that the district court missed something. It's just a disagreement with how the district court applied the appropriate legal standard in deciding these evidentiary issues, which are bound up with the tone and tenor of the trial of this case. For these reasons, the judgment should be affirmed. I want to turn first to the warranty data at issue in this case. The standard of review for this is whether the district court abused its discretion in excluding these thousands of unadorned assertions of warranty claims, claiming that a seat belt was, quote, slow to retract. There is nothing further in the records indicating why it was slow to retract or any sort of diagnostic assessment giving rise to any basis to believe that those circumstances would have been substantially similar to the theory at issue in this case. The test for substantial similarity is well settled in this circuit. At the threshold, the proponent must show that the condition, substantially similar to the occurrence in question, caused the prior accidents. We are missing that threshold showing that is what the district court found. Ms. Miller argued that Mr. Meyer, their seat belt expert, opined that these were substantially similar, but that was not what Mr. Meyer's testimony was at trial. When asked whether in prior cases he had formed an opinion about substantial similarity, as between other incidents and the subject incident, he said, yes, I had done that, but I did not do that in this case. There was no opinion offered by Mr. Meyer linking these countless warranty claims to the subject incident at issue in this case. Instead, Mr. Meyer reviewed the warranty data, and under Rule 703, an expert, simply because he reviews or relies on data informing opinion, does not render the evidence otherwise inadmissible to be admissible. So the Rule 703 argument, that gives the expert a mechanism for considering inadmissible evidence. It is not a rule of admissibility, though. As to these particular instances, there was nothing connecting this countless mass of claims to the subject incident here. The district court did not abuse its discretion. But even if there had been some error, there is no prejudice. The question of slow retraction speed was not a contested point at trial. Ford did not dispute that over time, a seatbelt retractor could slow down in terms of its speed. Through Mr. Meyer, the plaintiff introduced deposition testimony from Ford's corporate representative, acknowledging that reality. So even if this evidence was excluded improperly, it would have gone to a point which was not contested in this trial. Moreover, the plaintiff's claim in this case, an AEMLD products liability claim, does not require proof of notice to establish a prima facie case. This is not as though the plaintiff was prevented from preventing evidence to support an element of the claim. It was an unrelated issue that was not disputed at trial, so there was no prejudice. As to the exclusion of Ms. LaHon's testimony, the devil is in the details. Ms. LaHon testified not that her seatbelt was slow to retract. Ms. LaHon testified that her seatbelt retractor stopped altogether, and she had to manually feed the webbing back into the retractor. That is entirely different from what the plaintiff was claiming to this jury in this trial about this incident. Well, she could have been cross-examined about that then. Your Honor, the question becomes whether, as a threshold of admissibility, she should be permitted to testify under the substantial similarity test. It's not substantially similar, and therefore the witness should not be permitted to testify. The substantial similarity test recognizes the inherent prejudice, the undue prejudice that can come from the admission of other similar incident evidence. And if it's not weeded out under the substantial similarity test, then it risks that undue prejudice being released, and no amount of cross-examination can unring that bell. But here, the district court heard her testimony outside the jury's presence, and we have absolutely no idea what caused her retractor to fail. In fact, she had the retractor, the entire seatbelt apparatus, replaced by the dealership, and it still didn't work. That points to a problem very different than what the theory was presented at trial in this case. Same car, same Mustang, problem with the seatbelt. Seatbelt didn't work. Seems like the objection goes to the weight rather than the admissibility of her testimony with regard to what happened with her seatbelt. Two responses, Your Honor. Even if there was error in excluding her testimony, we still get into the harmless error aspect. The plaintiff offered this evidence to prove Ford's notice of a problem. That was not a contested point at trial. Ford acknowledged that the seatbelts could slow over time. But second of all, that doesn't address the issue of Mr. Henderson belatedly disclosing the identity of Ms. Lahan. Well, her identity was disclosed once they became aware of her. And so her identity was disclosed 14 days before the trial, if I remember correctly? Yes, Your Honor. That's enough time for you to take her deposition, isn't it? Two weeks before the trial, isn't that enough time? The issue, Your Honor, is whether the district court abused its discretion in that determination. Since this court was the Fifth Circuit, it's recognized that the exclusion of evidence under the circumstances like these are entrusted to the wide discretion of the district court. The district court considered the importance of Ms. Lahan's testimony. The district court considered the reason for the failure to disclose the witness earlier. And the district court considered the prejudice to Ford if Ms. Lahan was permitted to testify. The district court considered the exact factors that Mr. Henderson is urging this court to also consider. But the analysis for whether she could be used as an impeachment witness was different, wasn't it? And so your colleague on the other side says that Ford maintained that the seat belt had not failed to retract in situations where someone was wearing it as opposed to just for stowage. Tell me why the district court didn't err in excluding that use of Ms. Lahan's testimony. Yes, Your Honor. The testimony from Mr. Burnett was that he was unaware of problems with slow retraction while the belt was being worn resulting from spring tension friction. He did not testify in the abstract that he was unaware of slow retraction without regard to the cause. It was a very specific question he was answering about spring tension friction associated with that being the cause of slow retraction. Ms. Lahan did not testify, would not have testified that her seat belt failed to work altogether because of spring tension friction. She did not know the reason why her seat belt stopped working. The dealership had made no diagnosis about why her seat belt had stopped working. She had scrapped the vehicle many, many years earlier, so therefore no one could actually determine why her seat belt in that instance had stopped working. It would not have rebutted this testimony that Mr. Burnett offered on that point. His testimony was very specific to the spring mechanism, and he was unaware of anyone complaining about that while being worn. And Ms. Lahan did not answer that testimony, and so it would not have been error to have excluded her on the grounds that it was rebuttal. How do you have standing to cross-appeal an issue for which there's no injury? You're the prevailing party. How do you have standing to cross-appeal? Yes, Your Honor. This is an uncertainty in this circuit's law. We have not found any decisions from this court analyzing the issue of whether a conditional cross-appeal under these circumstances is permitted. Other courts, however, have permitted this maneuver. For example, the Second Circuit, the D.C. Circuit, I believe the Ninth Circuit as well. In those situations, the courts have recognized that if the appellant succeeds on appeal and gets a new trial, at that point, the appellee has been aggrieved in that sense, which would give and confer standing on the appellee to challenge. Well, there's an exception, I think, to the rule where there's a collateral effect of the district judge's order. And so there's no collateral effect here because if the case goes back, Ford can just object again, right, without any preclusive effect. If that were the court's decision, we would be comfortable with that. I have an abundance of caution because of the uncertainty of whether this was required to preserve our rights to challenge the denial of our Daubert motion. We filed a conditional cross-appeal given the uncertainty of the state of law on this issue. We have found cases, for example, where the Eleventh Circuit, I believe as recently as last year, where there was the grant of summary judgment, the appellant challenged the grant of summary judgment, and the appellee conditionally cross-appealed the denial of a motion to strike an affidavit in the summary judgment record. In that particular instance, this court ultimately affirmed the judgment and didn't have to reach the conditional cross-appeal under those circumstances. But given those uncertainties, I have an abundance of caution. We filed our conditional cross-appeal to ensure that we were not waiving any challenge to the denial of our Daubert motion. As to the question of cross-examination, again, this is a matter entrusted to the district court's considerable discretion as to whether and to what extent an issue has been interjected into a case such that cross-examination is permitted. In this particular instance, the appellant is claiming that, first of all, Mr. Burnett should have been cross-examined on this warranty data as a result of testifying about the spring tension friction, which I've already addressed. But as to Mr. Miller, Ford's seatbelt expert, he testified generally that this particular retractor spring was state-of-the-art. And based on that state-of-the-art testimony, the appellant's claim is that they should have been able to offer all of this countless unadorned warranty data. This issue has not necessarily arisen within this circuit, but the Eighth Circuit, the First Circuit, and the Tenth Circuit have all held that even if OSI or other similar incident evidence is being offered for rebuttal purposes, it must still satisfy the substantial similarity test. In those instances, it's still within the district court's discretion how to apply that test. There's been no abuse of discretion here. As to the contributory negligence issue on the motion for judgment as a matter of law, this is a question of whether there is any evidence in the record to support contributory negligence. Mr. Henderson is not claiming that contributory negligence isn't an affirmative defense under these circumstances. He's not claiming that the district court misstated the law in instructing the jury on contributory negligence, only and narrowly whether there is evidence in the record to support contributory negligence. There is a construction of the evidence which supports contributory negligence. Mr. Miller, former seatbelt expert, testified without objection that there was only one of two scenarios which could have caused the excess webbing in Mr. Henderson's retractor or in his seatbelt. It was either one, if Mr. Henderson had pinched the webbing in the D-ring and driven around with an excess of 15 inches of webbing in his seatbelt, which that would have been contributory negligence, or at least a jury could have so found. Or two, that while driving 60 miles an hour, Mr. Henderson reached so far over into the passenger side of the vehicle while exerting a pound of force on the seatbelt that when the accident sequence happened, the belt locked up with that webbing in the system. The jury was free to decide whether either of those two scenarios was contributory negligent. As to the question of causation, this court and the district court looks at the entire record to determine whether there is any evidence to support causation. Mr. Henderson's own experts, Mr. Lewis and Mr. Meyer, testified that had there not been the excess 15 inches of webbing in the system, Mr. Henderson's injuries would not have been as severe as they were. The jury, therefore, could have taken those two pieces of evidence, combined them together, and concluded that but for Mr. Chris Henderson's contributory negligence, his injuries would not have been as bad as they were. The appellant's underlying premise here is that the defendant should have presented evidence of causation, but that's not required. No cases are cited in the brief suggesting that the defendant had to prove that causation piece. All that's required is that the entire record supports the instruction, and that's exactly what happened. For these reasons, Your Honor, I respectfully request that this court affirm the judgment. Thank you, counsel. Ms. Miller? Your Honors, first, with respect to the prejudice to the plaintiff in the exclusion of the warranty claims, as well as Ms. Lawhon's testimony, in this case, under Alabama law, the only recoverable damages plaintiff has is punitive damages. The warranty claims go to the enormity of the wrong. There are thousands of these warranty claims with respect to the same vehicle, the same retractor, the same issue, a slow retractor, or failing to retract. And so, therefore, we were, in fact, prejudiced at the trial of this case because we were able to show the enormity of the wrong that was occurring with respect to Ford's Mustang vehicle. But you still would have had to show that there was the same cause for the problem, right? Yes, and we submit that we did do that through the proffer of Mr. Meyer. With respect to the Hessen v. Jaguar car's decision of this court, particularly footnote 17 sets out the proffer that the expert in that case did, in which the recall of a vehicle that was not the subject vehicle was admitted, as well as customer complaints of fuel leakage or smelling fuel odors. And in this case, we would submit that Mr. Meyer's proffer not only meets that standard, but it went even above and beyond that. Because in this case, we have the same vehicle, we have the same retractor. And with respect to the retractor spring, that was the issue in this case, is that the retractor spring was weak and was failing to pull the retractor back in. And so, with respect to Mr. Burnett's testimony, we would submit that he did open the door to be cross-examined on Ms. Lohan's testimony and the knowledge that Ford had with respect to issues wearing the seatbelt being worn. With respect to Ms. Lohan, we would also say that Ford did not contact her once we did put her on our witness and exhibit list. So, they did have time. They were not prejudiced. Not only do they have information with respect to what she would have said since 2014, but there was no effort taken on behalf of Ford to find out what, in fact, she may testify to at the trial of this case. And as Your Honor mentioned, they had two weeks, but they, in that two weeks, did not contact her at all. They had her contact information. We provided it again, and no contact was made with her. With respect to the prejudice that we experienced with the warranted claims in Ms. Lohan's testimony not being admitted at the trial of this case, again, Ford's assertion was that the slack in the seatbelt and the failure to retract or the slowness to retract would not occur when the seatbelt was being worn. Ms. Lohan's testimony specifically rebutted Mr. Burnett's testimony that this was not known to Ford, but also Mr. Miller's testimony that what plaintiff's expert was saying was flat wrong, and that testimony is in the record. On top of that, it allowed Ford to argue to the jury that the plaintiff had not presented any evidence in this case that what we say happened could, in fact, happen in the real world, and that is because Ms. Lohan's testimony was excluded. We submit that she did, in fact, meet the substantial similarity burden, but more importantly, in rebuttal, her testimony would have rebutted and cleared up those items testified to by Mr. Miller and Mr. Burnett during their direct examination. And because of that, prejudice was allowed to remain in this case when we were unable to cross-examine them, and then Ford was able to argue to the jury that we had presented no evidence that when wearing the seatbelt, it could remain with excess slack in the system or failure to retract. Ms. Lohan did testify it started as a slow retraction issue and then failed to retract. Therefore, we were stripped of the right to cross-examine these people. We were provided these opportunities, and we would ask that you please vacate the judgment that was entered in this case and grant plaintiff a new trial based upon these abuses of discretion as well as plaintiff's denial of the judgment as a matter of law. All right. Thank you. The court will be in recess until 2 o'clock this afternoon. All rise.